1

**O'MELVENY & MYERS LLP**
RANDALL W. EDWARDS (S.B. #179053)
redwards@omm.com
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone:     (415) 984-8700
Facsimile:     (415) 984-8701

2

3

4

5

SCOTT PINK (S.B. #122383)
spink@omm.com
2765 Sand Hill Road
Menlo Park, California 94025
Telephone:     (650) 273-2600
Facsimile:     (650) 273-2601

6

7

8

Attorneys for Defendant
HARD ROCK CAFE
INTERNATIONAL (USA), INC.

9

10

REBECCA A. GIROLAMO (S.B. #293422)
rgirolamo@omm.com
400 South Hope Street, 19th Floor
Los Angeles, California 90071
Telephone:     (213) 430-6000
Facsimile:     (213) 430-6407

VY N. MALETTE (S.B. # 341898)
vnguyen@omm.com
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660
Telephone:   (949) 823-6900
Facsimile:    (949) 823-6994

11

## UNITED STATES DISTRICT COURT

12

## EASTERN DISTRICT OF CALIFORNIA

13

14

CHRISTINA KING, individually and on
behalf of all others similarly situated,

15

Plaintiff,

16

17

v.

18

HARD ROCK CAFE INTERNATIONAL
(USA), INC.,

19

20

Defendant.

21

Case No. 2:24-cv-01119-DC-CKD

**HARD ROCK CAFE INTERNATIONAL
(USA), INC.'S MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS
SECOND AMENDED CLASS ACTION
COMPLAINT**

*Accompanying Documents*:
Notice of Motion and Motion to Dismiss;
Request for Judicial Notice; Declaration of
Robert Kantor; Declaration of Rebecca
Girolamo

22

Date:          October 17, 2025
Time:          1:30 PM
Courtroom:  8, 13th Floor
Judge:         Hon. Dena Coggins

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2                                                                                              **Page**

3   I.      INTRODUCTION ...................................................................................................... 1

4   II.     BACKGROUND ....................................................................................................... 2

5   III.    LEGAL STANDARD................................................................................................ 6

    IV.     ARGUMENT ............................................................................................................ 7

6           A.      Plaintiff Fails to State a Claim Under Any Clause of Section 631(a).................... 7

7                   1.      Plaintiff still fails to allege that Hard Rock violated the first three

8                           clauses of Section 631(a). .......................................................................... 7

9                   2.      Plaintiff fails to state a claim under CIPA Section 631(a). ........................ 8

10                          a.      The SAC does not allege that Meta "read or attempt[ed]" to
                                    read the "contents" of any of her electronic
                                    communications. .......................................................................... 8

11                          b.      The SAC fails to state plausible factual allegations that Hard
                                    Rock "aided" or "conspired with" Meta. .................................... 11

12          B.      Plaintiff's Section 632 Claim Fails for Multiple Reasons—None of Which

13                  Were Cured by Amendment................................................................................ 13

14                  1.      The SAC still fails to allege that the Internet communications at
                            issue are "confidential" for purposes of Section 632. ............................... 13

15                  2.      Plaintiff fails to allege that Hard Rock "eavesdropped upon" or

16                          "recorded" her electronic communications................................................ 15

            C.      Both CIPA Claims Also Fail Because Plaintiff Expressly Consented to the

17                  Collection Of The Information At Issue. ............................................................ 16

18  V.      CONCLUSION ...................................................................................................... 21

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page

### Cases

*Abbie v. Shasta Cnty.*,
   No. 2:20-cv-01995, 2023 WL 4274135 (E.D. Cal. June 29, 2023) ........................................ 15

*Adams v. Johnson*,
   355 F.3d 1179 (9th Cir. 2004) ............................................................................................... 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................ 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................ 6

*Berman v. Freedom Fin. Network, LLC*,
   30 F.4th 849 (9th Cir. 2022) ................................................................................................. 17

*Brown v. Google LLC*,
   525 F. Supp. 3d 1049 (N.D. Cal. 2021) ............................................................................... 15

*Campbell v. Facebook, Inc.*,
   77 F. Supp. 3d 836 (N.D. Cal. 2014) ................................................................................... 13

*Cantu v. Tapestry, Inc.*,
   697 F. Supp. 3d 989 (S.D. Cal. 2023) .................................................................................... 7

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ................................................................................................. 6

*DeSoto v. Yellow Freight Sys., Inc.*,
   957 F.2d 655 (9th Cir. 1992) ................................................................................................. 7

*Esparza v. UAG Escondido A1 Inc.*,
   No. 23-cv-0102, 2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ............................................. 11

*Fayer v. Vaughn*,
   649 F.3d 1061 (9th Cir. 2011) ................................................................................................ 6

*Flanagan v. Flanagan*,
   27 Cal. 4th 766 (2002) ................................................................................................... 13, 14

*Graham v. Noom, Inc.*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021) ................................................................................ 8, 9

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................................. 9

*Heiting v. Taro Pharms. USA, Inc.*,
   No. 2:23-cv-08002, 2023 WL 9319049 (C.D. Cal. Dec. 26, 2023) ...................................... 11

*In re Facebook Internet Tracking Litig.*,
   263 F. Supp. 3d 836 (N.D. Cal. 2017) ................................................................................... 8

*In re Google Assistant Privacy Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020) ................................................................................. 11

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*In re Google Inc.*,
  No. 13-MD-02430, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ...................................... 14

4

5

*In re Zynga Priv. Litig.*,
  750 F.3d 1098 (9th Cir. 2014)................................................................................................ 9

6

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018)................................................................................................. 6

7

8

*Mastel v. Miniclip SA*,
  549 F. Supp. 3d 1129 (E.D. Cal. 2021) ................................................................................. 8

9

*McCoy v. Alphabet, Inc.*,
  No. 20-cv-05427, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ............................................ 16

10

11

*Mikulsky v. Bloomingdale's, LLC*,
  713 F. Supp. 3d 833 (S.D. Cal. 2024) ................................................................................... 9

12

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001).................................................................................................. 6

13

*Opperman v. Path, Inc.*,
  84 F. Supp. 3d 962 (N.D. Cal. 2015) .................................................................................... 17

14

15

*People v. Lee*,
  31 Cal. 4th 613 (2003) ........................................................................................................ 11

16

*People v. Swain*,
  12 Cal. 4th 593 (1996) ........................................................................................................ 11

17

18

*Revitch v. New Moosejaw, LLC*,
  No. 18-cv-06827, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ......................................... 13

19

*Rodriguez v. Ford Motor Co.*,
  No. 3:23-cv-00598, 2024 WL 1223485 (S.D. Cal. Mar. 21, 2024) ...................................... 11

20

*Rodriguez v. Google LLC*,
  No. 20-cv-04688, 2021 WL 2026726 (N.D. Cal. May 21, 2021).......................................... 13

21

22

*Rutter v. Apple Inc.*,
  No. 21-cv-04077, 2022 WL 1443336 (N.D. Cal. May 6, 2022)............................................ 17

23

*Smith v. YETI Coolers, LLC*,
  754 F. Supp. 3d 933 (N.D. Cal. 2024) ................................................................................. 12

24

*Swarts v. Home Depot, Inc.*,
  689 F. Supp. 3d 732 (N.D. Cal. 2023) .............................................................................. 8, 13

25

*United States v. Corinthian Colls.*,
  655 F.3d 984 (9th Cir. 2011)................................................................................................. 16

26

*Vaccaro v. Altais*,
  No. 2:23-cv-04513, 2023 WL 7003211 (C.D. Cal. Oct. 23, 2023) ...................................... 15

27

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Vera v. O'Keefe*,
    791 F. Supp. 2d 959 (S.D. Cal. 2011) ..................................................................... 15

*Yoon v. Lululemon USA, Inc.*,
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) .................................................................... 9

*Yoon v. Meta Platforms, Inc.*,
    No. 5:24-cv-02612, (N.D. Cal. Dec. 30, 2024) ...................................................... 13

**<u>Statutes</u>**

Cal. Penal Code § 631(a) .......................................................................................... 16

Cal. Penal Code § 632 ............................................................................................... 16

**<u>Rules</u>**

Fed. R. Civ. P. 12(d) ................................................................................................. 16

Fed. R. Evid. 201(b)(1) ............................................................................................. 17

Fed. R. Evid. 201(b)(2) ............................................................................................. 17

1    **I.    <u>INTRODUCTION</u>**

2    Plaintiff's amendments in the Second Amended Complaint ("SAC") do not cure the

3    specific failures identified in the Court's order dismissing Plaintiff's prior complaint.  The Order

4    dismissed both of Plaintiff's California Invasion of Privacy Action ("CIPA") claims because:  (1)

5    Plaintiff failed to plead facts showing Meta read or attempted to read the "contents" of any

6    intercepted communications from Plaintiff to Hard Rock, as required by CIPA Section 631(a);

7    and (2) given the information involved, Plaintiff failed to plead facts showing any information

8    Meta allegedly intercepted was "confidential" within the meaning of CIPA Section 632.  ECF No.

9    34.  With respect to Plaintiff's Section 631(a) claim, the Court granted Plaintiff leave to see

10   whether she could allege interception of any information—beyond what the Court already found

11   to be "record information," such as "address, telephone number, email address, or zip code," and

12   information communicated through "button clicks."  The Court also granted Plaintiff leave to

13   amend her Section 632 claim to see whether she could allege "factual information regarding her

14   interactions with [Hard Rock]'s Website," from which she "has a reasonable expectation of

15   privacy in the communications Meta intercepted."

16   Although the Court's Order is clear, Plaintiff's SAC does not add factual allegations

17   sufficient to correct these deficiencies.  Plaintiff's limited amendments allege only that she made

18   two reservations through Hard Rock's website, and the SAC includes her browsing history on the

19   website.  But, they do not change the nature of the information involved, and thus they still fall

20   short of alleging facts establishing either "contents" of communications or "confidential"

21   information, under Sections 631 and 632, respectively.  Specifically, Plaintiff's SAC does not

22   allege, and her browsing history does not show, any substantive search queries or URLs that

23   could constitute "contents" or "confidential information" as case law has interpreted the statutes.

24   Her reservations, too, only contain information the Court already found to be "record

25   information."  There is also nothing unique about her particular interaction with Hard Rock's

26   website from which she can draw a reasonable expectation of privacy.

27   Moreover, the SAC does not cure the independent grounds for dismissal Hard Rock

28   previously argued, which the Court did not even need to reach in the Order:

- The SAC still does not allege any violation by Hard Rock under any of CIPA Section 631(a)'s four clauses, including the fourth clause, which, as relevant here, prohibits aiding, agreeing, or conspiring to unlawfully intercept the contents of a communication without consent of all parties.

- The SAC still does not allege that Hard Rock itself eavesdropped on or recorded her communications, and Section 632 does not impose derivative liability, particularly where no factual allegations support Hard Rock having knowledge or intent to support a criminal purpose.

- The SAC does nothing to overcome the independent problem that Plaintiff both expressly and implicitly gave consent to Hard Rock and to Meta that she consented to the information sharing she now challenges, barring both of her CIPA claims. Her consent is established by judicially noticeable documents and documents incorporated by reference: the very privacy policies and terms of use of both Hard Rock and Meta that her SAC references extensively.

Because none of the limited amendments in the SAC correct the identified deficiencies in the Order or the other deficiencies Hard Rock has identified, the Court should again dismiss Plaintiff's claims. And this time it should be with prejudice.

## II. **BACKGROUND**

Hard Rock owns and operates a chain of hotels across the United States, including in Sacramento, California. SAC ¶ 4. To facilitate its booking process, Hard Rock maintains a main website at www.hotel.hardrock.com and subdomains for each of its locations, including the website in issue: www.casino.hardrock.com/sacramento.[1] *Id.* ¶¶ 1, 3. Customers may browse this website and reserve their desired hotel room by selecting their destinations, desired dates, number of rooms, and number of guests. *Id.* ¶ 27.

Hard Rock provides a reward program, the Unity Loyalty Program, to its customers. Plaintiff is one such member of Hard Rock's Unity Loyalty Program. Declaration of Robert

---

[1] Plaintiff alleges that she visited "hardrockhotelsacramento.com," which is a URL redirect to www.casino.hardrock.com/sacramento. SAC ¶ 3.

Kantor ¶¶ 7-10.  Plaintiff joined Sacramento Hard Rock Casino local rewards card program—a predecessor to the Unity Program—on October 3, 2019.  *Id.* at ¶ 7.  On June 29, 2022, the Sacramento Hard Rock Casino local rewards card program migrated to the Unity Program.  *Id.* at ¶ 8.  Prior to this migration, throughout May and June of 2022, Hard Rock sent out pre-launch consent emails regarding the termination of the local rewards program and migration to Unity to existing local rewards program members.  *Id.* at ¶ 8.  These pre-launch consent emails required existing local rewards program members to review and affirmatively accept Unity's Terms and Conditions and Privacy Policy in order to migrate their local rewards program accounts to Unity. *Id.*  Plaintiff was sent this pre-launch consent email on June 24, 2022 and affirmatively electronically accepted the Unity and Unity Privacy Policy before migrating her local rewards card program account to Unity.  *Id.* at ¶¶ 9-10*; SAC ¶ 68.  Under the Unity Terms, Plaintiff "consent[ed] that the collection, use, and disclosure of [her] information (***including your personal information***) by the Program Manager, the Hard Rock Affiliated Parties, and the Participating Locations [including Hard Rock hotels and casinos] will be done in accordance with the [Unity] Privacy Policy."  Kantor Decl., Ex. 1 at 1 (emphasis added); *see also* SAC ¶ 68.  The Unity Privacy Policy makes nearly the same disclosures as the Hard Rock Terms and Privacy Policy when read in full, including about disclosures to third-party service providers.  Kantor Decl., Ex. 2 at 4, 7 (disclosing Personal Information, defined as "any information relating to an identified or identifiable individual" that may be collected and shared with third-party service providers when users navigate to "evaluate usage of the Program Website, Unity Apps, our online services, and your user experiences"); *see also* SAC ¶ 68.

Further, Plaintiff alleges she is a Facebook user.  SAC ¶ 3.  She also asserts that all Facebook users assent to three Meta agreements:  Meta's Terms, Meta's Cookies Policy, and Meta's Privacy Policy.  *Id* ¶ 74.  As a Facebook user, she was thus subject to Meta's terms and received its privacy disclosures.  *See id.* ¶¶ 3, 74.  Meta's three agreements taken together disclose in detail the kind of information that will be collected and shared, including browser and device information, location-related information, credit card information where applicable, and information collected by "cookies and similar technologies" regarding user browsing and social

media activity on Facebook and its partners.  Girolamo Dcl., Exs. E, F, G.  For example, Meta's

Cookie Policy states "[w]e may place cookies on your computer or device and receive

information stored in cookies when you use or visit:… Websites and apps provided by other

companies that use the Meta Products, including companies that incorporate Meta technologies

into their websites and apps."  Girolamo Dcl., Ex. G at 1-2.

Moreover, in order to completely view Hard Rock's website, customers must select their

preferences by clicking one of three options provided on a cookie banner—"Cookies Settings";

"Accept All Cookies"; and "Reject All"—that states:

> "Cookies are small files stored on your browser.  We use cookies to analyze and enhance
> the usage of our website ("Performance Cookies") or to provide you with customized
> content based on the preference you saved on our website ("Functional Cookies") and we
> may share data with our advertising partners to build profiles about you to show you
> relevant ads ("Targeting Cookies").  Click on "Cookies Settings" to set your preferences.
> **Privacy Policy**."

*See* Declaration of Rebecca Girolamo ("Girolamo Dcl."), Ex. D at 1, Ex. B; *see also* SAC ¶ 69.

The phrase "Privacy Policy" appearing at the end of the cookie banner's prose is bold and

hyperlinked to Hard Rock's Privacy Policy page at https://hotel.hardrock.com/privacy.aspx,

which describes how the website allows "certain third party advertisers and partners to collect

Personal Information about your use of the Website through first and third-party cookies in order

to serve adverts to you," and that "clear gifs, pixel tags and other technologies" can be used to

"track the activities of Website visitors, help [Hard Rock] manage content, and compile statistics

about Website usage."  SAC ¶¶ 67 n.46, 68 n.49; Girolamo Dcl., Ex. B at 8.  Hard Rock's Privacy

Policy is also referenced in Hard Rock's Terms of Use, which states:  "Our information collection

and use policies with respect to the privacy of such Personal Information are set forth in the

website's Privacy Policy which is incorporated herein by reference for all purposes."  SAC ¶ 67;

Girolamo Dcl., Ex. A at 2.

According to the SAC, Hard Rock uses Meta Business Tools, including a pixel that has

the ability to track users' activities, selections, and text entry as they navigate through the domain.

SAC ¶¶ 34-35.  This pixel allegedly collects certain information about Hard Rock's customers

when they navigate the Hard Rock website—including when booking a hotel on the checkout

1    page—such as "email address, first name, last name, phone number, gender, zip code, city and

2    state" and "the event that took place."  *See id.* ¶¶ 3, 48, 56-58.  Plaintiff alleges that the

3    information purportedly collected by the pixel constitutes a "guest record" under Cal. Civil Code

4    § 53.5.  *Id.* ¶¶ 2-3, 16-24, 65, 113-119.  She further makes the legal argument that such a "guest

5    record" qualifies as a "confidential communication" for purposes of CIPA.  *Id.* ¶ 119.

6        Plaintiff alleges that, around October 5, 2023 and January 12, 2024, she visited Hard

7    Rock's website and booked a hotel room on a subsidiary page for the Sacramento location.  *Id.* ¶

8    3.  During that visit, a Meta Tracking Pixel allegedly used on that page collected certain

9    information about her name, email address, phone number, and room-related selections that was

10   "personal" and "confidential" under California Civil Code § 53.5.  *E.g.*, SAC ¶ 3.  The SAC

11   asserts that Plaintiff's allegedly "personal" and "confidential" information purportedly collected

12   by the tracking pixel was "intercepted" and "recorded" by Meta in violation of CIPA Sections

13   631(a) and 632.  *See* SAC ¶¶ 56-59, 106.

14       In short, Plaintiff asserts the same two claims that she previously asserted in the First

15   Amended Complaint ("FAC"), which was dismissed in its entirety with leave to amend by the

16   Court on June 9, 2025.  *See* Order.  In the Order, the Court held that Plaintiff's FAC "does not

17   identify with specificity what information she provided on [Hard Rock]'s Website that was

18   intercepted by Meta, Order at 6, and "falls short of alleging that the 'contents' of

19   communications, as opposed to 'record information,' were intercepted for Plaintiff's Section 631

20   claim."  Order at 7.  And the Court further held that Plaintiff's Section 632 claim was equally

21   deficient "[i]n light of Plaintiff's bare allegations regarding her interactions with [Hard Rock]'s

22   Website" because there could be no "reasonable inference" that Plaintiff had "a reasonable

23   expectation of privacy in the communications Meta intercepted."  Order at 9.

24       In response, Plaintiff filed the SAC, including an additional paragraph that now describes

25   Plaintiff's booking experience on Hard Rock's website, SAC ¶ 106, as well as exhibits showing

26   portions of Plaintiff's web browsing history and booking confirmation emails, SAC Exs. 1-3.

27   She also now alleges that Meta intercepted the "details" of "her bookings through the Hard Rock

28   website," including a "confirmation" number for her reservation, her name, arrival date, departure

1  date, number of guests, room type and nightly rate, and her "digital identifiers." SAC ¶ 106, Exs.

2  2-3.

3      The SAC also includes a few conclusory assertions about Hard Rock's knowledge of

4  Meta's purported improper use of user data. According to Plaintiff, Hard Rock was aware

5  because it "knows [] that Meta is a separate and distinct entity from Hard Rock," that Meta

6  collects "communications between Hard Rock consumers and Hard Rock," and that the Meta

7  Business Tools Terms describe Meta's use of information. SAC ¶¶ 100-103. But the SAC adds

8  no factual allegations to establish Hard Rock's knowledge of any violations of CIPA by Meta's

9  alleged conduct.

10  ### III.    LEGAL STANDARD

11      A motion to dismiss should be granted where, as here, the plaintiff has failed to allege

12  facts that would establish any cognizable legal claim against the defendant. *See Navarro v.*

13  *Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive, a plaintiff must plead enough facts to "state

14  a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

15  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). And while the Court must accept all well-

16  pleaded facts as true for purposes of a Rule 12(b)(6) motion, the Court need not assume the truth

17  of legal conclusions pleaded in the form of factual allegations. *Id.* at 677-79; *Fayer v. Vaughn*,

18  649 F.3d 1061, 1064 (9th Cir. 2011). "[C]onclusory allegations of law and unwarranted

19  inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179,

20  1183 (9th Cir. 2004).

21      On a motion to dismiss, a court may consider documents on which the complaint

22  necessarily relies if: "(1) the complaint refers to the document; (2) the document is central to the

23  plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6)

24  motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Likewise, courts

25  can take judicial notice of facts that cannot be reasonably contested, even if not incorporated by

26  reference into the complaint. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir.

27  2018).

28

1    Finally, "[a] district court does not err in denying leave to amend where the amendment

2    would be futile." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992); *Cantu v.*

3    *Tapestry, Inc*., 697 F. Supp. 3d 989, 995 (S.D. Cal. 2023) (finding amendment futile and

4    dismissing amended complaint with prejudice where the plaintiff's amendments to "the resulting

5    SAC failed to address the Court's concerns").

6    **IV.    ARGUMENT**

7    The SAC fails to salvage Plaintiff's CIPA claims from the deficiencies identified in the

8    Order or the other deficiencies the Order did not reach.  The amended allegations in the SAC still

9    do not plead facts sufficient to establish that information allegedly obtained by Meta constituted

10    the "contents" of protected communications as required by Section 631 or plausibly show that

11    communications by Plaintiff to Hard Rock arising from her navigation and use of the booking

12    process on the website were "confidential" as required by Section 632.  The reasons for dismissal

13    in the Order thus remain.  In addition, the SAC does nothing to address Hard Rock's other

14    dismissal arguments, including its consent argument.  Plaintiff's continued inability to state facts

15    sufficient to save her claims warrants dismissal with prejudice.

16    **A.    Plaintiff Fails to State a Claim Under Any Clause of Section 631(a).**

17    Plaintiff's theory under Section 631(a) is that Hard Rock violated prong 4 of that statute

18    by aiding, agreeing to, or conspiring with Meta to allow Meta to engage in:  (1) intentional

19    wiretapping; (2) willfully reading "the contents or meaning" of a communication in transit over a

20    wire without her consent; or (3) attempting to use or communicate information obtained as a

21    result of engaging in either of the previous two activities.  SAC ¶¶ 2, 25, 105.  Plaintiff did not

22    and does not now allege that Hard Rock violated the first three clauses of Section 631(a), which

23    would focus on Hard Rock's own actions.  Her prong 4 theory fails because her allegations about

24    information obtained by Meta Business Tools still do not, and cannot, show that Meta violated

25    Section 631(a), let alone that Hard Rock agreed to or aided Meta in doing so.

26           1.    Plaintiff still fails to allege that Hard Rock violated the first three clauses of
           Section 631(a).

27

28    As an initial matter, Plaintiff does not allege any violation by Hard Rock of the first three

1   clauses of Section 631(a).  Indeed, in her opposition to Hard Rock's motion to dismiss the FAC,

2   Plaintiff conceded that she was not trying to state such a claim.  ECF No. 23 at 4.  Nor could she

3   maintain any claim based on the SAC.  She cannot assert wiretapping by Hard Rock under the

4   first clause of Section 631(a) because the first clause is limited to intentional wiretapping arising

5   from the use of the telephone or wires, not the Internet communications at issue here.  *Mastel v.*

6   *Miniclip SA*, 549 F. Supp. 3d 1129, 1135-36 (E.D. Cal. 2021).  Plaintiff also cannot plausibly

7   allege that Hard Rock violated Section 631(a)'s second clause given that courts in the Ninth

8   Circuit repeatedly have held that there is no violation of Section 631(a), clause 2, by a party to the

9   communication at issue like Hard Rock (which Plaintiff conceded in SAC ¶¶ 3, 24).  *Swarts v.*

10  *Home Depot, Inc*., 689 F. Supp. 3d 732, 744-45 (N.D. Cal. 2023); *Graham v. Noom, Inc*., 533 F.

11  Supp. 3d 823, 832 (N.D. Cal. 2021); *In re Facebook Internet Tracking Litig*., 263 F. Supp. 3d

12  836, 845 (N.D. Cal. 2017) (dismissing CIPA claims where defendant did not "intercept or

13  eavesdrop on communications to which it was not a party").  And because the third clause of

14  Section 631(a) governs use of information obtained in violation of clauses one and two, Hard

15  Rock did not violate the third clause of Section 631(a) either.

16                  2.      Plaintiff fails to state a claim under CIPA Section 631(a).

17          The Court previously dismissed Plaintiff's claims under Section 631, clause 4, because

18  "Plaintiff's FAC falls short of alleging that the 'contents' of communications, as opposed to

19  'record information,' were intercepted."  Order at 7.  In the SAC, this threshold failure remains:

20  the SAC continues to be devoid of any plausible factual allegation that Meta "read or

21  attempt[ed]" to read the "contents" of any of her electronic communications, as required for a

22  violation under the statute.  Moreover, an independent deficiency is that Plaintiff still fails to

23  allege facts to establish that Hard Rock ever "aided, agreed with, and conspired" with Meta with

24  the intent to unlawfully share her information.

25                          a.      *The SAC does not allege that Meta "read or attempt[ed]" to read*
                                    *the "contents" of any of her electronic communications.*
26

27          The SAC does not change the outcome of the Court's ruling:  Plaintiff simply cannot

28  maintain a claim against Hard Rock under clause 4 for aiding or conspiring with Meta to violate

                                        8   MEMORANDUM OF POINTS AND AUTHORITIES
                                            2:24-cv-01119-DC-CKD

1   Section 631(a) where she does not allege facts sufficient to show that Meta read or attempted to

2   read the "contents" or meaning of a communication within the meaning of the statute.  Plaintiff's

3   limited amendments do not cure her prior failure.

4        As explained in Hard Rock's initial Motion (ECF No. 18) and as stated in the Order, the

5   "contents" of a communication means "the ***substance, purport or meaning*** of [an alleged]

6   communication"—i.e., the "intended message conveyed by the communication"—as distinct

7   from "record information regarding the characteristics of the message that is generated in the

8   course of [that] communication."  *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)

9   (addressing similar federal Wiretap Act); *see also Hammerling v. Google LLC*, 615 F. Supp. 3d

10  1069, 1093 (N.D. Cal. 2022) (holding that analysis of the "contents" of a communication for a

11  CIPA violation is the same as for the Wiretap Act); *Graham*, 533 F. Supp. 3d at 833 (same); *see*

12  *also* Order at 5 (quoting *Zynga* and citing *Yoon*).  By contrast, record information (not governed

13  by Section 631(a)) includes, among other things, "a person's name [and] address" as well as

14  "pages viewed … the date and time of the visit… Plaintiff's IP address… location… browser

15  type, and the operating system…."  *Yoon v. Lululemon USA, Inc*., 549 F. Supp. 3d 1073, 1082-83

16  (C.D. Cal. 2021); *see also Hammerling*, 615 F. Supp. 3d at 1092-93 (citing *Zynga*, 750 F.3d at

17  1104, 1108-09).  Therefore, a URL that includes "basic identification and address information" is

18  not "content," but a website "user's request to a search engine for specific information could

19  constitute a communication such that divulging a URL containing that search term to a third party

20  could amount to disclosure of the contents of a communication."  Order at 6 (quoting

21  *Hammerling* at 1108–09).  Likewise, information about "interactions" with a website, such as

22  button clicks and mouse movements, constitute record information instead of content.  Order at 7

23  (citing *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024)).  So too are

24  key presses and web pages visited.  *Mikulsky*, 713 F. Supp. 3d at 845; *see also* Order at 2-3.

25        The SAC does not add any factual allegations that would establish that the "contents" of

26  her communications were intercepted by Meta, let alone with Hard Rock's aid.  The SAC has an

27  added allegation that she made two bookings at Hard Rock and that certain "digital identifiers"

28  and the "details" of "her bookings through the Hard Rock website" were "shared with Meta"

1    using the "same transmission mechanisms" previously alleged.  SAC ¶ 106.  That new allegation

2    is insufficient for two reasons.

3         First, consistent with the law discussed above, the Court already held that "digital

4    identifiers" like "address, telephone number, email address, or zip code of Website users,"

5    constitutes record information—the interception of which is not covered by CIPA.  Order at 7.

6    Likewise with respect to Plaintiff's booking details, the amendments and additional exhibits

7    allege only that certain details of booking were collected and shared—*e.g.*, "confirmation"

8    number, arrival date, departure date, number of guests, room type, and nightly rate.  Exs. 2, 3.

9    The SAC concedes that this information was entered using button clicks.  *See e.g.* SAC ¶ 65

10   ("Namely, Meta intercepts Website users' button clicks selecting the destination to which they

11   wish to travel, the desired dates for their trip, the number of rooms they require, the numbers of

12   adults and children who will be traveling, and the particular hotel and room type in which they

13   wish to stay.").  Here too, the Court previously held such information insufficient to establish the

14   requisite "contents" where it is collected and shared via button clicks.  Specifically, the Order

15   stated that "Website users' button clicks selecting the destination to which they wish to travel, the

16   desired dates for their trip, the number of rooms they require, the numbers of adults and children

17   who will be traveling, and the particular hotel section or tower in which they wish to stay" is

18   "more akin to the 'record' information that the Ninth Circuit has held not to be contents of a

19   communication," Order at 2 (citing FAC ¶ 116); *id.* at 7.  The same result thus applies to any

20   amendments here, which merely establish other "button clicks" purportedly selected during the

21   booking process.

22        Second, the Court previously found that the FAC suffered from an additional independent

23   deficiency, namely that it was "devoid of any allegation describing ***her*** search queries."  Order at

24   7 (emphasis added).  The Order did not decide what search queries might reflect contents, *id.*

25   (using word "may"), and it again need not decide that issue.  The SAC amendments did not plead

26   the particular search queries she performed that Meta allegedly intercepted any descriptive URLs

27   that "may" reflect "contents" under Section 631(a).  To the contrary, her web browsing history,

28   Ex. 1, reflects no descriptive URLs or searches whatsoever.

For both independent reasons, Plaintiff's amendments to add SAC Paragraph 106, and the inclusion of Exhibits 1-3, do not resolve these insufficiencies. The SAC continues to fail to identify how she conveyed substantive information to Hard Rock's website beyond the mere button clicks relating to her booking details. Because Plaintiff fails to allege any violation of the first two clauses of Section 631(a) by Meta, any claim that Hard Rock aided Meta's use under the third clause also necessarily fails. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020).

> b.  *The SAC fails to state plausible factual allegations that Hard Rock "aided" or "conspired with" Meta.*

The SAC suffers from another, independent deficiency fatal to Plaintiff's Section 631(a) claim. As explained in Hard Rock's initial Motion, Plaintiff does not allege facts to show Hard Rock "aid[ed], agree[d] with, employ[ed], or conspire[d]" with Meta to commit an underlying violation.

Under California law, a conspiracy requires an agreement and a defendant's specific intent to commit the unlawful acts that are the objects of the conspiracy. *E.g., People v. Swain*, 12 Cal. 4th 593, 600 n.1 (1996) (elements of conspiracy include an agreement and specific intent). A similar requirement exists for "aiding" under the criminal law—Plaintiff must show that Hard Rock had knowledge of "the unlawful purpose and intended to help the other accomplish that purpose." *E.g., People v. Lee*, 31 Cal. 4th 613, 624 (2003) (defendant must "give such aid or encouragement with knowledge of the criminal purpose" and "with an intent or purpose either of committing, or of encouraging or facilitating the commission of, the crime in question") (internal quotation marks omitted). Courts have found that these principles apply equally to claims brought under Section 631(a). *E.g., Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1123 (S.D. Cal. 2024) (dismissing claim); *Esparza v. UAG Escondido A1 Inc.*, No. 23-cv-0102, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (applying the common law definition of aiding and abetting to Section 631(a) claim and finding plaintiff failed to assert facts to support the "knowledge" prong of that test); *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) (dismissing Section 631(a) claim absent allegations to establish that defendant

1    knowingly assisted the third party in committing an unlawful act, even though defendant paid the

2    third party); *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024) (dismissing

3    claim because plaintiff did not "allege that [d]efendant acted with 'specific intent to commit the

4    unlawful acts' or with 'knowledge of "the unlawful purpose and intent to help [third party]

5    accomplish that purpose.'").

6          Although this argument was not addressed by the Court in the Order, the SAC likewise

7    lacks factual allegations sufficient to establish that Hard Rock agreed with, or intended to help,

8    Meta have improper access to and use of Plaintiff's information in violation of Section 631(a).

9    The SAC added off-point allegations that Hard Rock "knows" "Meta's use of the contents of the

10   communications here at issue for Meta's own, unlawful purposes" because "Meta Business Tools

11   Terms" "confirm[] that it has the capability to use the information it collects" "to promote safety

12   and security on and off the Meta Products, for research and development purposes and to

13   maintain the integrity of and to provide and improve the Meta products." SAC ¶¶ 62, 103-104.

14   That was the very type of allegation found insufficient in *Rodriguez* and *Smith*. Similar to those

15   cases, the conclusory allegations here do not contain facts about how Hard Rock knows that Meta

16   specifically used data from its website for Meta's own purposes. The SAC does not allege, for

17   example, that Hard Rock had an agreement with Meta ***beyond*** what is disclosed in the Privacy

18   Policy and Terms and somehow intended to help Meta accomplish the purported unlawful

19   interception of Plaintiff's communications with the website. The SAC's other general conclusory

20   allegations that Hard Rock "aided, agreed with, employed, permitted, or otherwise enabled Meta

21   to wiretap" are similarly insufficient, including the allegations that Hard Rock was aware of

22   Meta's unlawful conduct because it "knows [] that Meta is a separate and distinct entity from

23   Hard Rock," that Meta collects "communications between Hard Rock consumers and Hard

24   Rock," and "purposefully installed" "Meta's Code." SAC ¶¶ 99-103. Courts decline to infer

25   from defendant's use of third parties' services alone that defendant knew of third party's unlawful

26   interception of information collected from defendant's website. *Smith*, 754 F. Supp. 3d at 943.

27         In short, for these reasons, Plaintiff's SAC accordingly fails to state a claim against Hard

28   Rock for violating Section 631(a) clause 4.

**B.    Plaintiff's Section 632 Claim Fails for Multiple Reasons—None of Which Were Cured by Amendment.**

Plaintiff's Section 632 claim also still fails for two independent reasons.  First, Plaintiff has not pled facts to cure the Order identified with this claim—i.e., the failure to establish "that her communications were 'confidential' as required" to give rise to a reasonable expectation of privacy.  Order at 9.  Second, Plaintiff does not allege that Hard Rock itself "eavesdropped upon" or "recorded" her electronic communications in violation of CIPA, and Section 632 does not provide for vicarious liability based on alleged actions by Meta.

**1.    The SAC still fails to allege that the Internet communications at issue are "confidential" for purposes of Section 632.**

Plaintiff's SAC still does not and cannot allege facts sufficient to show that any of her communications at issue were "confidential" within the meaning used in Section 632.  A communication is confidential under Section 632 only if a party has "an objectively reasonable expectation that the conversation is not being overheard or recorded."  *Rodriguez v. Google LLC*, No. 20-cv-04688, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) (citing *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77 (2002)).  This, in turn, depends on the context of the circumstances of the "actual conversation, not its content."  *Flanagan*, 27 Cal. 4th at 774.  Because of this requirement, and as the Order stated, "Courts generally find that internet communications do not have an objectively reasonable expectation of confidentiality."  Order at 8 (quoting *Yoon v. Meta Platforms, Inc*., No. 5:24-cv-02612, 2024 WL 5264041, at *6 (N.D. Cal. Dec. 30, 2024).  Multiple federal courts in California have "developed a presumption" to this effect:  commercial "Internet-based communications are not 'confidential' within the meaning of Section 632, because such communications can easily be shared."  *Swarts*, 689 F. Supp. 3d at 747.[2]

---

[2] *See also Rodriguez*, 2021 WL 2026726, at *7 (dismissing Section 632 claim based on communications with third-party apps); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (dismissing Section 632 claim based on Internet-based browsing activity and form field entries); *Campbell v. Facebook, Inc*., 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (dismissing Section 632 claim based on social media messages on

Plaintiff misplaces reliance on California's guest records law, Civil Code Section 53.5, to allege that her communications with Hard Rock are "confidential" *per se* and thus give rise to any reasonable expectation of privacy. No authority supports that proposition, as explained in the initial Motion. And any such reading is "incompatible" with the California Supreme Court's holding in *Flanagan*, which held that whether an individual had a reasonable expectation of confidentiality depends on the nature of "the actual conversation, not its content." *Flanagan*, 27 Cal. 4th at 774. Moreover, the Court rejected Plaintiff's reasoning in a similar context, when denying Plaintiff's Motion to Seal the SAC. The Court stated that Plaintiff's "reliance on [California Civil Code Section 53.3] is unavailing" because "aside from Plaintiff's name, none of the information Plaintiff intends to redact from her second amended complaint or accompanying exhibits constitutes a 'guest record' as defined by California Civil Code § 53.5(CJBG1])." ECF No. 39 at 2-3. This statement holds equally true for the SAC and accompanying exhibits—none of which contain her social security number, date of birth, location of birth, address, telephone number, driver's license number, credit card number, or license plate number that could qualify as a "guest record" under that statute. *Id.* Even if that statute could serve as a basis to find that the communications at issue are "confidential"—the SAC simply does not include any factual allegations that any "guest record" information was collected or shared.

In addition, the Court previously ruled that "Plaintiff's FAC lacks sufficient factual information regarding her interactions with [Hard Rock's] Website, as required to state a cognizable Section 632 claim." Order at 9. The SAC does not change that result. Plaintiff still has not pled sufficient facts to establish any "unique" context surrounding her communications with Hard Rock's website based on which she can reasonably expect privacy. SAC ¶ 106, Exs. 1-3. For example, she once again does not allege any facts surrounding substantive search queries or URLs, as found absent in the FAC. Order at 7. Nor does she allege any special relationship she has with Hard Rock beyond user and ordinary website operator, nor that she browsed the Hard Rock website in private browsing mode. *See, e.g.,* Order at 8; *Brown v. Google LLC*, 525 F.

Facebook); *In re Google Inc.*, No. 13-MD-02430, 2013 WL 5423918, at *22-23 (N.D. Cal. Sept. 26, 2013) (dismissing Section 632 claim based on email communications).

1 | Supp. 3d 1049, 1074 (N.D. Cal. 2021) (holding data intercepted from users while in private

2 | browsing mode constitutes confidential communications).  As before, no reasonable inference can

3 | be drawn that Plaintiff has a reasonable expectation of privacy in the basic booking information

4 | Meta alleged intercepted.  *See supra* Section IV(A)(2)(a).

5 |          2.          Plaintiff fails to allege that Hard Rock "eavesdropped upon" or "recorded"
                        her electronic communications.

6 |

7 |          Another independent deficiency exists with respect to the Section 632 claim:  Plaintiff has

8 | failed to allege that ***Hard Rock*** eavesdropped upon or recorded her purportedly "confidential"

9 | communications.  She alleges only that "***Meta****… would intentionally use an electronic amplifying*

10 | *or recording device to eavesdrop upon and record the confidential communications of Plaintiff*

11 | *and Class Members,*" *see* SAC ¶ 119 (emphasis added), and that neither Plaintiff nor Class

12 | Members ever consented to "***Meta****'s intentional use*" of an alleged device to "*eavesdrop or*

13 | *record*" on their alleged communications with Hard Rock.  *Id.* ¶ 120.  The SAC contains no

14 | equivalent allegations against Hard Rock, nor could it since Hard Rock is the intended recipient

15 | of the communication.  *Id.* ¶ 24.  Instead, Plaintiff vaguely suggests that Hard Rock is, again,

16 | liable for assisting Meta's purported interception of the communications at issue.  *Id*. ¶ 118.

17 |          But, as explained in the initial Motion, the plain language of Section 632 does not

18 | expressly provide for the same derivative liability found in Section 631(a), clause 4, so under the

19 | doctrine of avoiding surplusage, the grammatical reading where such language is absent from

20 | Section 632 is that Section 632 does not provide for the same aiding and abetting liability as

21 | Section 631(a).[3]  *See Abbie v. Shasta Cnty*., No. 2:20-cv-01995, 2023 WL 4274135, at *5 n.3

22 | (E.D. Cal. June 29, 2023).  And even if Section 632 does permit Plaintiff to bring a claim against

23 | Hard Rock for allegedly aiding and abetting Meta's purported violation of Section 632, this claim

24 | necessarily fails for the same reasons that Plaintiff's aiding and abetting claim under Section

25 |

26 | [3] Hard Rock recognizes that two courts have allowed an aiding and abetting liability claim to
survive a motion to dismiss given the well-pleaded specific factual contentions made in those

27 | cases.  *See Vaccaro v. Altais*, No. 2:23-cv-04513, 2023 WL 7003211 (C.D. Cal. Oct. 23, 2023);
*Vera v. O'Keefe*, 791 F. Supp. 2d 959 (S.D. Cal. 2011).  But those cases do not address the

28 | specific, intentional linguistic differences between Section 631(a) and Section 632 and are,
accordingly, not persuasive, let alone dispositive.

1   631(a) fails—i.e., Plaintiff's allegations do not plausibly establish that Hard Rock agreed with,

2   much less *intended* to help accomplish, Meta's purported eavesdropping or recording of her

3   allegedly confidential information in violation of Section 632.  *Supra* Section IV(A)(2)(b).

4   Section 632, too, must therefore be dismissed for this additional independent reason.

5           **C.**      **Both CIPA Claims Also Fail Because Plaintiff Expressly Consented to the**

6                        **Collection Of The Information At Issue.**

7         The SAC, like the FAC, cannot overcome the further independent problem underlying

8   both of her CIPA claims:  she expressly consented to Hard Rock's technologies.  Plaintiff

9   expressly consented to Hard Rock's and Meta's terms and policies that disclosed the potential

10  collection and sharing of information using pixel tracking technologies that she now challenges.

11  Because both CIPA claims require the absence of consent, Cal. Penal Code §§ 631(a), 632, both

12  her claims fail.  Any conclusory assertion by Plaintiff that she did not provide consent is directly

13  contradicted by factual allegations in the SAC and documents incorporated by reference—which

14  make clear that Plaintiff provided express written consent *multiple* times.

15        The SAC discusses Hard Rock's and Meta's terms and applicable privacy policies and

16  (selectively) quotes from them extensively.  SAC ¶¶ 62 n.41, 67 n.45-46, 68 n.47-49, 74 n.50-53,

17  75 n.54-55, 76-79 n.56-62.  Thus, the Court may consider the complete versions, and Plaintiff's

18  agreement to them, under the doctrines of incorporation by reference and judicial notice.  Those

19  versions are incorporated by reference into the SAC because her claims necessarily rely on and

20  directly quote these agreements, which go to the heart of her claims—i.e., whether she consented

21  to the collection and sharing of her electronic communications from the Hard Rock website

22  through the use of tracking technologies.  *See* SAC ¶¶ 74-77, nn. 50-62; *see also United States v.*

23  *Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011); *McCoy v. Alphabet, Inc.*, No. 20-cv-05427,

24  2021 WL 405816, at *2 (N.D. Cal. Feb. 2, 2021) (incorporating by reference various versions of

25  defendant's privacy policy and terms of service).  If the Court does not agree that this argument is

26  suitable for resolution on a Rule 12(b)(6) motion, however, Hard Rock requests that the Court

27  convert this portion of its motion to a motion for summary judgment.  Fed. R. Civ. P. 12(d).  The

28  doctrine of judicial notice applies too, as the statements in these documents are not "subject to

1    reasonable dispute" given that each is "generally known" and "can be accurately and readily

2    determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid.

3    201(b)(1)–(2); *see also Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 976 (N.D. Cal. 2015) (taking

4    judicial notice of privacy policy); *Rutter v. Apple Inc.*, No. 21-cv-04077, 2022 WL 1443336, at *3

5    (N.D. Cal. May 6, 2022) (granting request for judicial notice of terms and conditions).  *See* Hard

6    Rock's Request for Judicial Notice, filed concurrently with this motion.

7          Plaintiff's consent is first established by her constructive notice and implied acceptance of

8    Hard Rock's disclosure about its practices and technology related to the collection and sharing of

9    specific categories of information regarding visitors to its websites, including those who book

10   rooms.  Plaintiff alleges that she used the Hard Rock website to "browse[] and book[] a Hard

11   Rock hotel" on or around October 5, 2023 and January 12, 2024.  SAC ¶ 3.  But when discussing

12   both companies' terms and privacy policies, she cherry-picks language to contend that such

13   policies are inadequate to disclose the information-sharing she alleges occurred and, thus, that she

14   did not provide "prior consent" to either Hard Rock or Meta.  *See* SAC ¶¶ 2, 3, 62-73, 82, 97,

15   105, 120.  The factual allegations in the SAC and the policies themselves establish the opposite is

16   true.

17         Plaintiff consented to Hard Rock's collection ***and sharing*** of her information using

18   alleged tracking technologies as a member of the Unity Loyalty Program and again when booking

19   hotels during the checkout process.  In addition, she had previously implicitly consented to the

20   Unity Terms and Privacy Policy as early as June 24, 2022 when, as a pre-existing member of a

21   Sacramento Hard Rock Casino local rewards program, she received an email notifying her that

22   the local rewards program would be terminated and her account would be migrated to the Unity

23   program under the Unity program Terms and Conditions and Privacy Policy noted in that email.

24   Kantor Decl. ¶¶ 7-9.  Plaintiff, now a Unity member, was required by that email to affirmatively

25   review and accept Unity's Terms and Privacy Policy to migrate her account from the local

26   rewards card program to the Unity Program.  *See id.*; *see also Berman v. Freedom Fin. Network,*

27   *LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (finding clickwrap agreements enforceable).  She

28   implicitly consented to those Terms and Privacy Policy by continuing to use the Unity Program

and using the Hard Rock website after that notice, and subsequently confirmed that implicit

consent by affirmatively opting into the Terms and Privacy Policy on November 9, 2023.  Kantor

Decl. ¶¶ 8-9.  Under the Unity Terms, Plaintiff "consent[ed] to the collection, use, and disclosure

of [her] information (***including your personal information***) by the Program Manager, the Hard

Rock Affiliated Parties, and the Participating Locations [including Hard Rock hotels and casinos]

in accordance with the [Unity] Privacy Policy."  Kantor Decl., Ex. 1 ¶ 2 (emphasis added).  The

Unity Privacy Policy makes nearly the same disclosures as the Hard Rock Terms and Privacy

Policy when read in full.  Kantor Decl., Ex. 2 at 4 (disclosing Personal Information, defined as

"any information relating to an identified or identifiable individual," may be collected and shared

with third-party service providers when users navigate to "evaluate usage of the Program

Website, Unity Apps, our online services, and your user experiences").

        Plaintiff cannot sidestep these detailed disclosures by mischaracterizing out of its essential

context a single provision of the Unity Privacy Policy as broadly stating Hard Rock will not

"share your Personal Information with [] third parties."  SAC ¶ 68.  The language that Plaintiff

quotes only applies to information collected by Google Analytics or other applications for the

purpose of evaluating website usage and Hard Rock's services and not for the purpose of booking

hotel rooms—as made clear by that language's placement in a separate paragraph under clear

large font heading "Third-Party Analytics."  *See id.*, Ex. 2 ¶ 36.  And the Unity Privacy Policy is

clear that it may share such information with third party vendors:  it expressly discloses that

personal information may be collected (as alleged here) in connection with "booking at a

restaurant, hotel, or any other activity (e.g., a concert, show tickets, tours)" and used for "Web

content and advertising. To deliver relevant website content or Unity App content and

advertisements to you and to measure or understand the effectiveness of the advertising we serve

to you."  Kantor Decl., Ex. 2 at 5, 9.  And it also states that such information may be shared with

providers of marketing services, which includes Meta.  *Id.*

        Plaintiff accepted (and does not otherwise deny that she accepted) such terms well before

her visits to the Hard Rock website on October 5, 2023 and January 12, 2024, *see* Kantor Decl. ¶¶

7-9, thus her electronic acceptance of each Hard Rock agreement constitutes express written

1  consent to the use of cookies and tracking technologies to collect and share the information she

2  entered when booking a hotel and using the Hard Rock website.

3        Upon her arrival to the Hard Rock website, Plaintiff was provided notice of the Hard Rock

4  Terms and Privacy Policy.  She was presented with a cookie banner that stated "[w]e use cookies

5  …and we may share data with our advertising partners," prompted users to "set [their]

6  preferences," and hyperlinked Hard Rock's Privacy Policy, which was also available and

7  hyperlinked at the bottom of the home page.  Girolamo Dcl., Ex. D at 1.  Plaintiff alleges she

8  continued to use the website to making bookings.  And Plaintiff directly quotes the Terms and

9  Privacy Policy repeatedly in the SAC.  The plain language of the Terms and Privacy Policy shows

10  that, contrary to Plaintiff's allegations, Hard Rock comprehensively discloses the scope of

11  information that may be collected, including "domain name, IP Address, browser type and page

12  views…[and] geolocation data."  Girolamo Dcl., Ex. B at 1.  Hard Rock also discloses that it may

13  collect a user's "Personal Information," which is broadly defined as "personally identifiable

14  information."  *Id.*  As disclosed, Personal Information may include, among other things, "first and

15  last names, email address(es), phone numbers…birthdate, number of children and their ages,

16  [and] social network [] data…."  *Id.*  The Hard Rock Policy further discloses that this Personal

17  Information may be collected using "automated devices and applications" like cookies, pixel tags,

18  and other tracking technologies to "track the activities of Website visitors, help us manage

19  content, and compile statistics about Website usage," and "to improve [Hard Rock's] services…."

20  *See id*. at 8, at Cookies, Clear GIFS, Pixel Tags and Other Technologies, Third Party

21  Analytics/Tracking; *see also* SAC ¶¶ 67 (quoting Privacy Policy regarding Hard Rock's use of

22  "cookies and other tracking technologies" to "evaluate our services"), 69 (describing types of

23  cookies disclosed in Hard Rock's Privacy Policy).  Moreover, the Privacy Policy discloses that

24  such information collected may be shared with Hard Rock's affiliates and third-party service

25  providers (like Meta) that perform certain services on Hard Rock's behalf.  Accordingly, the Hard

26  Rock Terms and Privacy Policy affirmatively disclose that all the information Plaintiff alleges to

27  be at issue here, *see* SAC ¶¶ 3, 106, may be collected and shared with third-party service

28  providers like Meta, establishing Plaintiff's consent to those practices when she accessed the

1    website and remained on it to browse and book travel.

2         Still further, and independently dispositive of her claim, Plaintiff consented to the sharing

3    and disclosure of the information at issue when she accepted *Meta*'s terms and relevant policies.

4    The SAC alleges that when "first signing up for Facebook, a user assents to three agreements: the

5    Meta Terms of Service, the Cookie Policy, and Privacy Policy." SAC ¶¶ 74-78. Plaintiff alleges

6    she is a Facebook user, *see id.* ¶ 3; she therefore assented to these three agreements, too. She

7    again only selectively quotes from Meta's relevant policies and focuses on the disclosures relating

8    to how Meta requires an advertiser to comply with various laws and Meta's own terms to avoid

9    sharing "sensitive personal information" with Facebook. *See* SAC ¶¶ 79-82. A closer reading of

10   Meta's agreements confirms that, like Hard Rock's relevant terms and privacy policies, the

11   agreements disclose in detail the kind of information that will be collected and shared. Girolamo

12   Dcl., Exs. E at 1, F at 2-8. Such information may include:

13        • Device information,

14        • IP address,

15        • Location-related information,

16        • Information from "cookies and similar technologies," including Meta Pixel,

17        • Email address,

18        • Website browsing activity, and

19        • Information about how a partner's (like Hard Rock) products and services are

20             used.

21   Meta also details how it may (but does not necessarily) use such information. *See* Girolamo Dcl.,

22   Ex. G at 2-5 (information may be used to improve Meta's products), 5-6 (information may be

23   used by partners, like Hard Rock, that use Meta's products for analytics purposes). Accordingly,

24   when Plaintiff consented to Meta's three agreements, she provided consent to the information

25   practices she now challenges. This consent, individually and collectively with the consent to

26   Hard Rock's terms and disclosures, bars her CIPA claims against Hard Rock.

27

28

V.    **<u>CONCLUSION</u>**

For the reasons stated, Hard Rock requests that the Court grant its Motion to Dismiss Plaintiff's Second Amended Complaint entirely, without leave to amend.

Dated:  August 13, 2025                          O'MELVENY & MYERS LLP

By:      */s/ Randall W. Edwards*
                Randall W. Edwards

*Attorney for Defendant Hard Rock Cafe International (USA), Inc.*