| | |
|---|---|
| **O'MELVENY & MYERS LLP**<br>RANDALL W. EDWARDS (S.B. #179053)<br>redwards@omm.com<br>Two Embarcadero Center, 28th Floor<br>San Francisco, California 94111<br>Telephone: (415) 984-8700<br>Facsimile: (415) 984-8701<br><br>SCOTT PINK (S.B. #122383)<br>spink@omm.com<br>2765 Sand Hill Road,<br>Menlo Park, California 94025<br>Telephone: (650) 273-2600<br>Facsimile: (650) 273-2601<br><br>Attorneys for Defendant<br>HARD ROCK CAFE INTERNATIONAL (USA), INC. | REBECCA A. GIROLAMO (S.B. #293422)<br>rgirolamo@omm.com<br>400 South Hope Street, Suite 1900<br>Los Angeles, California 90071<br>Telephone: (213) 430 6000<br>Facsimile: (213) 430 6407<br><br>VY N. MALETTE (S.B. # 341898)<br>vnguyen@omm.com<br>610 Newport Center Drive, 17th Floor<br>Newport Beach, California 92660<br>Telephone: (949) 823-6900<br>Facsimile: (949) 823-6994 |

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA KING, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HARD ROCK CAFE INTERNATIONAL (USA), INC.,<br><br>Defendant. | Case No. 2:24-cv-01119-DC-CKD<br><br>**HARD ROCK CAFE INTERNATIONAL (USA), INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Date: October 17, 2025<br>Time: 1:30 PM<br>Courtroom: 10, 13th Floor<br>Judge: Hon. Dena Coggins |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ....................................................................................................................... 2

I.    PLAINTIFF'S SECTION 631 CLAIM FAILS AS A MATTER OF LAW ...................... 2

    A.    The SAC Continues to Fail to Identify Any "Content" of Plaintiff's Communications That Meta "Read or Attempt[ed]" to Read. ................................ 2

    B.    Plaintiff Did Not Sufficiently Plead Facts Showing That Hard Rock Agreed With, Conspired With, Aided, or Intended to Help Meta Accomplish Any Purportedly Improper Access to Her Information. ................................................ 5

II.    PLAINTIFF'S SECTION 632 CLAIM FAILS AS A MATTER OF LAW ...................... 6

    A.    The Communications at Issue Are Not Confidential Under Section 632. .............. 6

        1.    Plaintiff Pleads No Unique Circumstances to Overcome the Presumption That Commercial Internet-based Communications Are Not 'Confidential' Under Section 632. ........................................................ 6

        2.    Plaintiff Provides No Basis For Her Assertion That "Guest Record" Under California Civil Code § 53.5 Is Per Se Confidential. ....................... 8

    B.    Section 632 Does Not Provide for Derivative Liability. ....................................... 10

III.    PLAINTIFF CONSENTED TO HARD ROCK'S PRIVACY POLICIES, WHICH FULLY DISCLOSED THE INFORMATION SHARING AT ISSUE. ............................ 11

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbie v. Shasta Cnty.*,
  2023 WL 4274135 (E.D. Cal. June 29, 2023) .......................................................................... 11

*Allen v. Shutterfly, Inc.*,
  2020 WL 5517172 (N.D. Cal. Sept. 14, 2020) ........................................................................ 13

*Berman v. Freedom Fin. Network, LLC*,
  30 F.4th 849 (9th Cir. 2022) .................................................................................................... 12

*Bernstein v. United Collection Bureau, Inc.*,
  2013 WL 5945056 (S.D. Cal. Nov. 5, 2013) ............................................................................. 9

*Brown v. Brennan*,
  2017 WL 11713951 (N.D. Cal. May 11, 2017) ....................................................................... 15

*Brown v. Google LLC*,
  685 F. Supp. 3d 909 (N.D. Cal. 2023) ...................................................................................... 7

*Chabolla v. ClassPass Inc.*,
  129 F.4th 1147 (9th Cir. 2025) ................................................................................................ 14

*Cousin v. Sharp Healthcare*,
  681 F. Supp. 3d 1117 (S.D. Cal. 2023) ..................................................................................... 6

*Doe v. Tenet Healthcare*,
  2025 WL 1635956 (E.D. Cal. June 9, 2025) ............................................................................. 5

*Esparza v. UAG Escondido A1 Inc.*,
  2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .............................................................................. 6

*Ewing v. Flora*,
  2015 WL 12564225 (S.D. Cal. Mar. 25, 2015) ......................................................................... 9

*Flanagan v. Flanagan*,
  27 Cal. 4th 766 (2002) .............................................................................................................. 7

*Gabrielli v. Haleon US Inc.*,
  2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ........................................................................ 10

*Heiting v. Taro Pharms. USA, Inc.*,
  709 F. Supp. 3d 1007 (C.D. Cal. 2023) ..................................................................................... 6

*In re Carrier IQ, Inc.*,
  78 F. Supp. 3d 1051 (N.D. Cal. 2015) ................................................................................... 4, 5

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ..................................................................................................... 4

*In re Meta Pixel Healthcare Litigation*,
  647 F. Supp. 3d 778 (N.D. Cal. 2022) ................................................................................... 4, 9

<5B>

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Jackson v. Amazon.com, Inc.*,
  65 F.4th 1093 (9th Cir. 2023) ............................................................................................... 12

*Javier v. Assurance IQ, LLC*,
  2022 WL 1744107 (9th Cir. May 31, 2022) ........................................................................ 13

*M. H. v. Done Glob. Inc.*,
  2025 WL 629613 (N.D. Cal. Feb. 26, 2025) .......................................................................... 6

*Mikulsky v. Bloomingdale's LLC*,
  2024 WL 3091395 (S.D. Cal. May 14, 2024) ........................................................................ 4

*Mikulsky v. Bloomingdale's LLC*,
  2025 WL 1718225 (9th Cir. June 20, 2025) .......................................................................... 4

*Mikulsky v. Bloomingdale's, LLC*,
  713 F. Supp. 3d 833 (S.D. Cal. 2024) ............................................................................. 3, 13

*Mitchell v. Sonesta Int'l Hotels Corp.*,
  2024 WL 4471772 (C.D. Cal. Oct. 4, 2024) .......................................................................... 8

*Nguyen v. Barnes & Noble, Inc.*,
  763 F.3d 1171 (9th Cir. 2014) .............................................................................................. 14

*Payne v. Wasco State Prison*,
  2015 WL 4493087 (E.D. Cal. July 23, 2015) ...................................................................... 15

*People v. Lee*,
  31 Cal. 4th 613 (2003) ........................................................................................................... 5

*People v. Swain*,
  12 Cal. 4th 593 (1996) ........................................................................................................... 5

*Quamina v. JustAnswer LLC*,
  721 F. Supp. 3d 1026 (N.D. Cal. 2024) ............................................................................... 14

*Revitch v. New Moosejaw LLC*,
  2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........................................................................ 5

*Rodriguez v. Ford Motor Co.*,
  722 F. Supp. 3d 1104 (S.D. Cal. 2024) .................................................................................. 6

*Rodriguez v. Google LLC*,
  2021 WL 2026726 (N.D. Cal. May 21, 2021) ....................................................................... 7

*Roe v. Amgen Inc.*,
  2024 WL 2873482 (C.D. Cal. June 5, 2024) ....................................................................... 13

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
  2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ...................................................................... 13

*Silver v. Stripe Inc.*,
  2021 WL 3191752 (N.D. Cal. July 28, 2021) ...................................................................... 13

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Smith v. Google, LLC*,
    735 F. Supp. 3d 1188 (N.D. Cal. 2024) ................................................................................. 8

*Smith v. Rack Room Shoes, Inc.*,
    2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .................................................................... 6, 10

*Smith v. YETI Coolers, LLC*,
    754 F. Supp. 3d 933 (N.D. Cal. 2024) ................................................................................... 6

*Stoba v. Saveology.com, LLC*,
    2014 WL 3573404 (S.D. Cal. July 18, 2014) ...................................................................... 11

*United States v. Van Poyck*,
    77 F.3d 285 (9th Cir. 1996) .................................................................................................. 13

*Vaccaro v. Altais*,
    2023 WL 7003211 (C.D. Cal. Oct. 23, 2023) ...................................................................... 10

*Vera v. O'Keefe*,
    791 F. Supp. 2d 959 (S.D. Cal. 2011) .................................................................................. 10

*Yoon v. Meta Platforms, Inc.*,
    2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ....................................................................... 7

**INTRODUCTION**

Plaintiff's opposition does not show how any new factual allegations in her Second Amended Complaint ("SAC") adequately address the deficiencies detailed in the Court's prior dismissal order and Hard Rock's pending motion. Rather, Plaintiff reasserts already failed arguments about why her largely unchanged allegations are enough and points to limited, conclusory new language in one new paragraph. That paragraph still does not allege information was disclosed beyond what the Court already held were not contents under CIPA Section 631 or confidential communications under CIPA Section 632.

With respect to Plaintiff's Section 631 claim, she wrongly argues that the Ninth Circuit reversed case law cited by the Court and Hard Rock to allege that the limited information shared constitutes "content" of communications. The Ninth Circuit did not do so, and that other case's full history confirms that Hard Rock, and the Court's prior order, are right about the much higher bar required for the CIPA claims than what Plaintiff can clear here. In addition, Plaintiff misreads the law in arguing that no specific intent by Hard Rock is required to establish liability for aiding Meta's alleged violations.

With respect to Plaintiff's Section 632 claim, she does not rebut Hard Rock's cases and the Court's prior order establishing that commercial Internet communications are presumptively not treated as confidential under Section 632, and she identifies no "unique circumstance" as the Court has held is required to overcome that presumption. Nor does she cite any authority for her contention that records under Civil Code Section 53.5 are per se confidential under Section 632 or that the information even constitutes a guest record under Section 53.5, or offer any persuasive argument against Hard Rock's showing that the type of information sharing alleged here is exempt under Section 53.5.

Finally, the Opposition does not overcome the fact that Plaintiff consented to the limited information sharing alleged to have occurred during her visit to Hard Rock's website.

Plaintiff's inability to correct the deficiencies in her allegations confirms that the major flaws underlying her claims are incurable. The Court should dismiss the SAC with prejudice.

## ARGUMENT

### I. PLAINTIFF'S SECTION 631 CLAIM FAILS AS A MATTER OF LAW.

Plaintiff does not overcome the two reasons her Section 631 claim fails: (1) her factual allegations show that the information Meta intercepted was not "content" of her communications within the meaning of the statute, and (2) Plaintiff fails to plead that Hard Rock agreed with, conspired with, aided, or intended to help Meta commit any allegedly unlawful conduct.

#### A. The SAC Continues to Fail to Identify Any "Content" of Plaintiff's Communications That Meta "Read or Attempt[ed]" to Read.

In its Order dismissing the FAC, the Court held that Plaintiff's "button clicks" and "room-related" selections are not "contents" of a communication under Section 631(a). Order at 6–8. The Court granted Plaintiff leave to amend, allowing her an opportunity to add factual allegations that Meta intercepted information of a different nature that may constitute "content" of a communication—such as any "descriptive URLs" that reveal her "search queries." *Id.* Plaintiff instead offers the same facts in her limited amendments, attaches exhibits that confirm that she cannot allege any fact of the type the Court requires, and contends that these reiterated allegations are sufficient to establish that the "content" of her communication was intercepted, despite the Court's clear Order.

As shown in Hard Rock's Motion, the communications at issue are akin to routing information designed to aid a Hard Rock user in booking hotels, i.e. record information. Mot. at 10 (citing cases). In response, Plaintiff points to her conclusory allegations that the Meta Pixel does not simply intercept "record information," but also her booking information, which are "'contents' of communications" because they "reveal specific information about a user's queries." Opp. at 15. But these conclusions cannot distract from Plaintiff's failure to amend to allege facts showing interception of any information beyond the same information that the Court held to be record information: customer information and information conveyed by "button clicks" containing the destination she wishes to travel, desired dates for her trip, number of rooms, and number of adults and children. *Id.*

Plaintiff's limited amendments include a new paragraph that describes Plaintiff's booking

experience on Hard Rock's website with her "digital identifiers," "confirmation number," and room reservation information, SAC ¶ 106, as well as exhibits showing portions of Plaintiff's web browsing history and booking confirmation emails, SAC Exs. 1-3.  But, contrary to the assertion in her Opposition, Opp. at 15, Plaintiff's SAC does not allege facts showing full-string URLs containing search queries, as required by the Court.  ECF No. 34 ("Order") at 7.

The new exhibits do not establish that any protected "contents" were shared.  Her web browsing history in Exhibit 1 reveals no descriptive URLs or searches, and her confirmation emails in Exhibits 2 and 3, which she does not allege to have been intercepted, merely show customer information and data conveyed through button clicks—the very same information the Court previously held to be record information instead of "content."  Order at 7.

Likewise, Paragraph 106 simply identifies more details of the same kind of booking information the Court previously ruled to be record information that is not a basis for a claim under Section 631.  Her assertion that this basic booking information constitutes "content" echoes her failed arguments about the FAC.  Opp. at 15; Order at 5-7.  As before, that argument is contradicted by both well-established case law and the Court's Order: button clicks do not convey content.  Order at 7.  The Court's Order is clear: Plaintiff's digital identifiers such as "address, telephone number, email address, or zip code … are insufficient because that information constitutes 'record information,'" and booking information conveyed through "'button clicks' is more akin to the 'record' information that the Ninth Circuit has held not to be contents of a communications."  Order at 7 (quoting *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (*Mikulsky I*)).  The Court should apply the same rule to again dismiss the SAC, even if Plaintiff now re-labels that information as "digital identifiers."  *See also* Mot. at 9 (citing other cases reaching similar conclusions).

In her attempt to undermine precedent cited by Hard Rock and the Court, Plaintiff misstates the law.  She accuses Hard Rock of relying on "portions of the district court opinion which the Ninth Circuit reversed"—*Mikulsky I*, 713 F. Supp. 3d at 845 (decided on January 25, 2024).  Opp. at 17.  This is the very same district court decision cited by the Court in its Order.  Order at 7.  Plaintiff's accusation is wrong.  What the Ninth Circuit reversed—in a non-

1  precedential opinion—was not the decision that Hard Rock and the Court cited but a later order in
2  the same case that had dismissed an amended complaint that—in striking contrast to Plaintiff's
3  amendment here—had factual allegations different in kind from the information in *Mikulsky I*.
4  *Mikulsky v. Bloomingdale's LLC*, 2024 WL 3091395 (S.D. Cal. May 14, 2024) ("*Mikusky II*"),
5  *aff'd in part, rev'd in part*, 2025 WL 1718225 (9th Cir. June 20, 2025) ("*Mikulsky III*").
6  *Mikulsky III*, which Plaintiff cites, thus has no bearing on the *Mikulsky I* decision Hard Rock and
7  the Court cited, or the limited allegations in this case.  In *Mikulsky II*, the plaintiffs amended
8  substantially to allege that the challenged technology "indexes all user sessions," including
9  "events, users, date & time constraints, clicked elements, URLs, time, location, CSS selectors," as
10  well as "credit card data, credit card applications and other personal information," "products
11  viewed or placed in … carts or wish lists," and "data entered into text fields but not submitted."
12  *Id.* at *3 (citation omitted).  The Ninth Circuit held that amendment to be adequate under Section
13  631.  *Mikulsky III*, 2025 WL 1718225, at *1.  *Mikulsky III* said nothing to question the district
14  court's original dismissal in *Mikulsky I*, which is what continues to support dismissal here.

15  While Plaintiff cites several other cases, none address factual deficiencies similar to what
16  remain in the SAC.  *In re Meta Pixel Healthcare Litigation* did not, as Plaintiff suggests, find that
17  any button clicked in the process of using a website necessarily involves the transmission of
18  "content."  Opp. at 17.  In that case, the pixel allegedly transmitted sensitive personal
19  information, including patient status connected to a particular medical provider and URLs of the
20  medical pages visited (including for treatment of specific health disorders).  647 F. Supp. 3d 778,
21  791 (N.D. Cal. 2022).  The court ruled that Meta could use that information to link a user's
22  identity to sensitive health information.  *Id*. at 785, 795-96.  No such information or linking is
23  alleged here.

24  Both *In re Facebook Internet Tracking* and *In re Carrier IQ* analyze full-string URLs that
25  contain users' search queries, information not present here even though the Court's prior order
26  made clear it needed to be.  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th
27  Cir. 2020); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015).  Additionally, *In
28  re Carrier IQ*'s limited holding is that a combination of username/password does not constitute

4     REPLY ISO MOTION TO DISMISS
NO. 2:24-cv-01119-DC-CKD

1  "contents" for purposes of the statute. 78 F. Supp. 3d at 1083. *Revitch v. New Moosejaw LLC*
2  also is inapposite because it does not contain any discussion of "contents." 2019 WL 5485330, at
3  *1 (N.D. Cal. Oct. 23, 2019).

### B. Plaintiff Did Not Sufficiently Plead Facts Showing That Hard Rock Agreed With, Conspired With, Aided, or Intended to Help Meta Accomplish Any Purportedly Improper Access to Her Information.

Plaintiff concedes that her allegations are not sufficient to state a claim under the first three prongs of Section 631(a). Opp. at 4. With respect to Prong 4, Plaintiff is wrong to assert that Hard Rock's argument improperly treated the test as requiring both aiding and conspiring. Opp. at 14. Hard Rock argued the correct disjunctive test: that "Plaintiff does not allege facts to show Hard Rock 'aids, agrees with, employs, or conspires' with Meta to commit an underlying violation." Mot. at 11-12. This is an independent ground for dismissal of her claim.

Hard Rock's motion explained that Prong 4 requires a showing that Hard Rock and Meta had an agreement and that Hard Rock had "specific intent" to commit the unlawful acts at issue. Mot. at 11-12. Plaintiff makes no argument that Hard Rock agreed with, employed, or conspired with Meta to commit unlawful acts. But Plaintiff argues that Prong 4's imposition of liability for "aiding" a violation is meant to apply regardless of "specific intent" and that her allegation that Hard Rock "installed and configured the Pixel to help target its advertisements" is sufficient to plead Hard Rock's liability under Prong 4. She ignores the authorities cited in Hard Rock's motion, instead relying on this Court's prior decision in *Doe v. Tenet Healthcare* to support her argument. Opp. at 4, 14-15 (citing *Doe v. Tenet Healthcare*, 2025 WL 1635956 (E.D. Cal. June 9, 2025)). Her reliance is misplaced. Although *Tenet* held that Section 631(a) "as worded does not include an intent standard," 2025 WL 1635956 at *15, the *Tenet* defendant did not argue—as Hard Rock does here—that Section 631 imputes an intent requirement through the terms "aid[]" and "conspire[]," both of which are theories that require specific intent under California law. *Id*. *Compare* Mot. at 11; *People v. Swain*, 12 Cal. 4th 593, 600 n.1 (1996); *People v. Lee*, 31 Cal. 4th 613, 624 (2003); *with* Mot. to Dismiss in *Doe*, 23-cv-01106, ECF No. 41 (E.D.Cal. Jul. 19, 2024); Reply, *Doe*, ECF No. 30 (Dec. 1, 2023). The *Tenet* defendant also did not offer, and therefore the Court did not expressly consider, the many authorities Hard Rock has provided to show that

1   Prong 4 claims require specific intent.  Mot. at 11-12, citing *Rodriguez v. Ford Motor Co.*, 722 F.
2   Supp. 3d 1104, 1123 (S.D. Cal. 2024); *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at
3   *6 (S.D. Cal. Feb. 12, 2024); *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1019
4   (C.D. Cal. 2023); and *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024);
5   *see also Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *4 (N.D. Cal. Apr. 4, 2025); *M.*
6   *H. v. Done Glob. Inc.*, 2025 WL 629613, at *2 (N.D. Cal. Feb. 26, 2025).

7   Plaintiff's citation to *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1129-30 (S.D.
8   Cal. 2023), is similarly unpersuasive.  In *Cousin,* a case in which the court ultimately granted
9   defendant's motion to dismiss, the court rejected defendant's argument that Prong 4 is
10  "essentially" an "aiding and abetting" prong of 631(a) on the basis that the defendant "provide[d]
11  no case law" on that point.  *Id.* at 1129-30.  As discussed above, that reasoning does not apply
12  here.  Absent factual allegations of specific intent, Plaintiff cannot state a claim against Hard
13  Rock for violating Prong 4.

14  **II.     PLAINTIFF'S SECTION 632 CLAIM FAILS AS A MATTER OF LAW.**

15  Plaintiff's opposition likewise fails to overcome Hard Rock's showing that Section 632
16  claim must be dismissed because her communications were not "confidential" within the meaning
17  of the statute, and Section 632's language does not provide for derivative liability.

18  **A.     The Communications at Issue Are Not Confidential Under Section 632.**

19  Neither Plaintiff's SAC nor Opposition changes the Court's previous holding: the
20  information captured and shared with Meta is not confidential for the purposes of Section 632.
21  Plaintiff has not pled anything unique about her interaction with Hard Rock's website that could
22  overcome the presumption that basic information about the nature of an Internet communication
23  is not confidential.  Moreover, Plaintiff provides no support for her argument that her information
24  is per se confidential based on Cal. Civ. Code § 53.5.

25  **1.     Plaintiff Pleads No Unique Circumstances to Overcome the**
26  **Presumption That Commercial Internet-based Communications Are Not 'Confidential' Under Section 632.**

27  Plaintiff's limited amendment—the same Paragraph 106 discussed above—does not
28  overcome the flaws identified in Hard Rock's previous motion and the Court's Order.  Plaintiff

does not dispute Hard Rock's showing that a communication is "confidential" under Section 632 only where a party has "an objectively reasonable expectation that the conversation is not being overheard or recorded" based on the circumstances of the "actual conversation." *Rodriguez v. Google LLC*, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) (citing *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77 (2002)).  Plaintiff still fails to acknowledge the standard applied by the Court and other courts in the Ninth Circuit: "'Courts generally find that internet communications do not have an objectively reasonable expectation of confidentiality, especially if those communications can be easily shared by the recipients of the communications.' … A plaintiff must plead 'something unique about [] particular internet communications' to demonstrate those communications are confidential."  Order at 8.  Plaintiff does not do so.  She instead mischaracterizes Hard Rock's position to be that commercial Internet-based communications are never confidential under Section 632.  Opp. at 19.  To the contrary, Hard Rock argues that, as the Court previously held, Plaintiff must plead sufficient facts to establish any "unique" context surrounding her communications with Hard Rock's website based on which she can reasonably expect privacy.  Mot. at 14; Order at 8.  These allegations are still missing here.

       First, Plaintiff does not address the cases the Order or Hard Rock cite holding that commercial Internet communications are presumptively not confidential—not even *Revitch*, which she relies on for her other arguments.  Order at 8 (quoting *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *6 (N.D. Cal. Dec. 30, 2024)); Mot. at 13 n.2 (collecting cases).  Instead, Plaintiff offers case law she contends rejects the presumption.  However, Plaintiff is wrong in relying on these cases because they all contain "something unique about the particular communications" that rebuts the presumption, an element that is lacking here.  *See* Order at 8.  In *Brown v. Google LLC*, the court acknowledges the presumption but chooses not to follow it given the particular facts of Google's collection of its users' information from its own search tool in "Incognito" mode (communications that were confidential because Google indicated they were private) from commercial communications over the Internet, like Plaintiff's communications here.  685 F. Supp. 3d 909, 939 (N.D. Cal. 2023).  *Smith v. Google, LLC* also recognizes courts' use of the presumption but distinguishes the facts alleged there as involving "sensitive" tax and

1    financial information at issue.  735 F. Supp. 3d 1188, 1199–1200 (N.D. Cal. 2024).  Plaintiff's
2    factual allegations much more closely align with the facts of those cases recognizing that Internet
3    communications are presumptively not confidential: her room-selection requests and hotel
4    booking are significantly different than the Incognito searches or sensitive tax information at
5    issue in *Brown* and *Smith*, respectively.

6    And Plaintiff also cannot prevail based on *Mitchell v. Sonesta Int'l Hotels Corp.*, a non-
7    binding authority, because it does not: (1) describe the information it held to be confidential under
8    Section 632; (2) apply the objective expectation of privacy standard; or (3) acknowledge the
9    presumption applied by many other courts in the Ninth Circuit that, absent unique circumstances,
10   Internet communications are not confidential.  2024 WL 4471772, at *11 (C.D. Cal. Oct. 4,
11   2024).  Plaintiff argues that *Mitchell* shows her allegation that "Plaintiff … did not reasonably
12   expect that anyone other than Defendant would be on the other end of the communication" is
13   sufficient to establish confidentiality.  But *Mitchell* does not stand for such a sweeping liability
14   proposition, and even if it did, this lone case would conflict with the weight of authority and this
15   Court's Order already holding this very language to be inadequate in the prior complaint.  Order
16   at 9 (finding that "Plaintiff has not pled that her communications were "confidential" when she
17   alleges that she "'reasonably expected that her communications would be confined' to her and
18   Defendant because California Civil Code Section 53.5(a) mandates that 'guest records' are
19   confidential.").

### 2. Plaintiff Provides No Basis For Her Assertion That "Guest Record" Under California Civil Code § 53.5 Is Per Se Confidential.

Regardless of any presumption, Plaintiff fails to allege facts that would establish any reasonable expectation of privacy in the communications at issue here, as required for a communication to be "confidential" under Section 632.  Opp. at 20-21.  She argues that her communications are "confidential" solely as "guest records" under California Civil Code § 53.5 because, she says, courts have "routinely recognized communications to be 'confidential' under CIPA § 632 when shown to be sensitive under applicable laws, regulations, and industry norms." Opp. at 21.  Plaintiff still has not cited a single case that holds that California Civil Code § 53.5

1   renders the communications at issue here per se confidential.  Nor could she.  And the cases she
2   cites do not establish the "routine" rule she advocates.  For example, *In re Meta Pixel* (which
3   recognized the presumption that Internet communications are not confidential) held that certain
4   communications with medical providers were confidential because such communications were
5   protected under HIPAA (a well-known privacy statute) and because health-related
6   communications are almost always "uniquely personal"—unlike the general "commercial" online
7   communications alleged here.  647 F. Supp. 3d at 798-99.  Plaintiff's remaining cases likewise
8   involve highly sensitive information not at issue here and do not establish a "routine" rule that
9   information protected under another law is necessarily confidential for purposes of Section 632.
10  *See, e.g.*, *Bernstein v. United Collection Bureau, Inc.,* 2013 WL 5945056, at *4 (S.D. Cal. Nov. 5,
11  2013) (attorney-client privileged communications concerning "highly personal and private
12  financial information"); *Ewing v. Flora,* 2015 WL 12564225, at *4 (S.D. Cal. Mar. 25, 2015) (no
13  statute or regulation at issue); *Smith*, 735 F. Supp. 3d at 1193-94 (same).

        An additional problem with Plaintiff's argument is that the Court previously held that
Plaintiff has not alleged sufficient facts to show that her communications with Hard Rock's
website are "guest records" as defined by California Civil Code Section 53.3.  Order at 9; *see also*
ECF No. 39 at 2-3 (denying motion to seal, stating that Plaintiff's "reliance on [California Civil
Code Section 53.3] is unavailing" because "aside from Plaintiff's name, none of the information
Plaintiff intends to redact from her second amended complaint or accompanying exhibits
constitutes a 'guest record' as defined by California Civil Code § 53.5(c).")  Plaintiff's
Opposition does not, and cannot, plug this gap that the Court identified.

        The proper test of "confidentiality" under Section 632 is whether users would have a
reasonable expectation of privacy.  Mot. at 13 (citing cases).  Plaintiff also cannot establish that
Hard Rock created a reasonable expectation of privacy in the shared information based on either
(1) her misleading extraction of language from an unrelated portion of Hard Rock's Privacy
Policy or (2) users' option to select "Reject All" on the Cookie Banner.  Opp. at 21.  Plaintiff's
Opposition merely repeats the SAC's misleading extraction of a single sentence from an unrelated
section that Hard Rock will not "share your Personal Information with these third parties" out of

1  its expressly limited context. That language appears in the section discussing information
2  collected by "automated devices and applications, such as Google Analytics," for purposes of
3  evaluating Hard Rock website usage and services, clearly appearing in a separate paragraph under
4  the heading in capitalized enlarged font "THIRD PARTY ANALYTICS/TRACKING." The
5  phrase "these third parties" expressly refers to the automated devices and applications being
6  discussed in this paragraph. Hence, this language does not apply nor could reasonably be
7  interpreted to apply to the information sharing alleged here, particularly given the other
8  undisputed disclosures in Hard Rock's Privacy Policy about information-sharing with third
9  parties like Meta, as detailed in Hard Rock's motion. Mot. at 16-20.

Finally, Plaintiff cannot draw support from her citation to *Gabrielli* for her proposition that Hard Rock's disclosure supported an expectation of privacy from Plaintiff. Opp. at 21; *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025). The *Gabrielli* defendant collected far more information beyond the basic information at issue here. *Id.* at *2, 6 (collecting "[i]nformation about the frequency and total number of visits to the Websites…Website products viewed or added to shopping carts…Device Information, Referring URL…and Geolocation Data."). It also is a standing decision, not a decision on the adequacy of pleading under Section 632. *Id.* at *6. Moreover, unlike the *Gabrielli* plaintiff, Plaintiff does not even allege that she selected "Reject All" on the Banner—nor would it matter if she did because the information at issue is not confidential. *Id.* at *2.

### B.   Section 632 Does Not Provide for Derivative Liability.

Plaintiff also fails to present a persuasive argument for derivative liability under Section 632 given the statute's absence of any language permitting it (in striking contrast to Section 631). Plaintiff cites the two court decisions already acknowledged by Hard Rock. *Vaccaro v. Altais*, 2023 WL 7003211 (C.D. Cal. Oct. 23, 2023); *Vera v. O'Keefe*, 791 F. Supp. 2d 959 (S.D. Cal. 2011). She also cites an additional case that is equally unavailing: *Rack Room Shoes,* 2025 WL 1085169, at *5. Those cases do not follow the plain language of Section 632, which, unlike Section 631, contains no derivative liability language provision. Thus, these cases are not persuasive, let alone dispositive. Mot. at 15, n.3. Under the doctrine of avoiding surplusage, the

1  grammatical reading where such language is absent from Section 632 but present in Section 631
2  is that Section 632 does not provide for the same aiding and abetting liability as Section 631(a).
3  *See Abbie v. Shasta Cnty.*, 2023 WL 4274135, at *5 n.3 (E.D. Cal. June 29, 2023).

4  Plaintiff's argument that Section 632 provides for derivative liability by the application of
5  California Penal Code 31 also is untenable. Opp. at 22. California Penal Code Section 31 relates
6  to aiding and abetting a crime and does not apply to offenses committed under Sections 632 and
7  632.7 where the plaintiff only seeks civil damages. *Stoba v. Saveology.com, LLC*, 2014 WL
8  3573404, at *4 (S.D. Cal. July 18, 2014). And a still further independently dispositive problem
9  for Plaintiff is that her derivative liability allegations here are inadequate just as they are for the
10 Section 631 claim. *See supra* at Section I(B).

### III.  PLAINTIFF CONSENTED TO HARD ROCK'S PRIVACY POLICIES, WHICH FULLY DISCLOSED THE INFORMATION SHARING AT ISSUE.

The Opposition also does not cure the underlying deficiency in Plaintiff's CIPA claims: she consented to Hard Rock's Terms and Privacy Policies, all of which clearly disclose the sharing of the information at issue here. Mot. at 16-20. Plaintiff did not oppose Hard Rock's Request for Judicial Notice of the Unity Loyalty and Hard Rock Terms and Privacy Policies, as well as the Meta privacy policy and terms that governed her as a Facebook user. Nor does she deny that she is a member of Hard Rock's Unity Loyalty Program or that she received the June 2022 Unity migration email, giving her notice of Unity's Terms and Conditions and Privacy Policy. Plaintiff attempts to avoid these fatal facts by arguing that whether the policies disclosed the information-sharing at issue is a fact question. Opp. at 2, 13.

There is no fact question that survives the pleadings. Plaintiff's consent is unequivocally demonstrated within the four corners of the SAC and judicially noticeable documents and documents incorporated by reference in multiple ways. Those documents establish that: (1) Hard Rock provided detailed disclosures notifying her that Hard Rock may collect and share her information using various technologies when she visits the Hard Rock website and books hotels during the checkout process; and (2) Facebook's Terms of Service, Cookie Policy, and Privacy Policy provided similar disclosures. *See* Mot. at 17 (quoting extensive disclosures regarding Hard Rock's use of tracking technology and collection and sharing of a website user's personal

information), *id.* at 18-19 (citing and identifying details about Facebook's disclosures of information collected and shared). Plaintiff accepted the Hard Rock Terms and Privacy Policy when she allegedly booked her room using Hard Rock's website. Mot. at 17. Further, as a Unity Member, Plaintiff received an email notifying her that her account would be migrated to the Unity program under the Unity program Terms and Conditions and Privacy Policy. *See* Mot. at 17-18 (citing Declaration of Robert Kantor, Exs. 1-2); *see also Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (finding clickwrap agreements enforceable). She implicitly consented to those Terms and Privacy Policy by continuing to use the Unity Program and Hard Rock's website after that notice, and subsequently, affirmatively opting into the Terms and Privacy Policy on November 9, 2023. Kantor Decl. ¶¶ 8-9. In addition, as the SAC alleges, she is a Facebook user that accepted Facebook's three agreements when she "first sign[ed] up" for Facebook. Mot. at 19 (citing SAC ¶¶ 74-78).

Plaintiff's argument that Hard Rock failed to include "proof" that she saw, read, or consented to the Unity Program's Terms and Privacy Policy is simply wrong. Opp. at 8. Hard Rock has met its burden to show consent by submitting a declaration providing the dates of the policies, methods of delivery, and her receipt of the terms years before her website visits at issue. Mot. at 18 (citing Kantor Decl. ¶¶ 7-9). Plaintiff's argument that Hard Rock must provide a copy of a specific email is not the law. This case is not, as Plaintiff asserts, like *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023), where Amazon provided only a vague statement that notification of new Terms of Service was sent via email to drivers using its service. As the Ninth Circuit observed, consent has been found adequate where a defendant—like Hard Rock here—shows that notice was provided, describes the emails sent, and the ways in which consent was given. *See id.* at 1100 (finding Amazon not required to provide verbatim evidence of the notice and assent to its updated terms); Mot. at 16-18.

Plaintiff misses the point when she takes issue with Hard Rock's Cookie Banner, arguing that "Plaintiff was [n]ever even required to interact with this banner." Opp. at 6, 7. However, interaction is not required for purposes of constructive notice. She does not dispute that the banner appeared before she input the room booking information upon which she bases her claims

1  of confidentiality. Hard Rock's Cookie Banner thus puts Plaintiff on inquiry notice, Mot. at 16-
2  18, and Plaintiff's continued use of website—including her site visits to enter information about
3  potential booking inquiries—constitutes implied consent. This is true whether or not she
4  interacted with the Cookie Banner, making both Plaintiff's argument and the case that she cited,
5  *Roe v. Amgen Inc.*, obsolete. Opp. at 6. 2024 WL 2873482, at *4 (C.D. Cal. June 5, 2024).
6  Unlike defendant in *Amgen* who was using its cookie banner to establish affirmative consent,
7  Hard Rock is establishing notice through its Cookie Banner and implied consent based on
8  Plaintiff's continued use of the website. Mot. 16-18. *Allen v. Shutterfly, Inc*., 2020 WL 5517172,
9  at *6 (N.D. Cal. Sept. 14, 2020); *see also Silver v. Stripe Inc*., 2021 WL 3191752, at *3 (N.D.
10 Cal. July 28, 2021) (courts have found that "[a] binding contract is created if a plaintiff is
11 provided with an opportunity to review the terms of service in the form of a hyperlink") (internal
12 quotations omitted); *United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996) ("Consent may
13 be express or may be implied."); *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL
14 1141168, at *10 (C.D. Cal. Feb. 27, 2025) ("Plaintiff's recognition that the Website collected her
15 information is sufficient to provide constructive notice of the Privacy Policy, such that Plaintiff
16 had inquiry notice upon visiting the Website."); *Mikulsky I*, 713 F. Supp. 3d at 847 ("[] use of the
17 website, while knowing that Defendants use session replay software, would equate consent to
18 being recorded, therefore negating an essential element of the CIPA claim.").
19      Plaintiff is incorrect to rely on *Javier* to argue any consent is invalid because it was
20 retroactive. Opp. at 7 (citing *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir.
21 May 31, 2022)). Here, unlike the sharing in *Javier*, Plaintiff alleges that data collection began
22 when she selected her booking information, SAC ¶¶ 40-45, so any collection and sharing of
23 information necessarily occurred after Plaintiff accessed the website, was given notice by the
24 prominently displayed Cookie Banner, and had full opportunity to review Hard Rock's Terms and
25 Privacy Policy before she began making selections through button clicks. The bookings also
26 occurred after Plaintiff was given notice of the Unity Terms and Privacy Policy in June 2022.
27 Simply put, Plaintiff's consent is not retroactive.
28      Plaintiff is also misguided in citing *Chabolla v. ClassPass Inc.* for the proposition that

1    courts regularly find browsewrap agreements unenforceable. 129 F.4th 1147 (9th Cir. 2025).

2    *Chabolla* is ineffective because it involves a sign-in wrap agreement instead of a browsewrap

3    agreement, rendering its discussions of browsewrap agreements dicta. *Id.* at 1150. Although the

4    case observed that "[c]ourts consistently decline to enforce browsewraps," it also does not hold

5    that browsewrap agreements are never enforceable. *Id.* at 1154 (quoting *Nguyen v. Barnes &*

6    *Noble, Inc.*, 763 F.3d 1171, 1178–79 (9th Cir. 2014)). *Nguyen* expressly states that "courts have

7    been more amenable to enforcing browsewrap agreement" when "the website contains an explicit

8    textual notice." 763 F.3d at 1177. Here, because Plaintiff does not contest the prominence of the

9    notice provided to her through the Cookie Banner and June 2022 migration email, she cannot

10   deny that she was on constructive notice of Hard Rock and Unity Terms and Privacy Policy and

11   manifested assent when she repeatedly used the Hard Rock website and Unity Program

12   afterwards. Likewise, Plaintiff's argument that repeated insufficient consent is not enough, citing

13   *Quamina v. JustAnswer LLC*, is off-point because it assumes that the notice provided by Hard

14   Rock's Cookie Banner was insufficient—but here, it was not. *Quamina v. JustAnswer LLC*, 721

15   F. Supp. 3d 1026, 1040 (N.D. Cal. 2024), *aff'd*, 135 F.4th 699 (9th Cir. 2025).

16        Instead, in an effort to sidestep these obstacles, Plaintiff argues that there is a question of

17   fact because a reasonable consumer would not be able to read through Hard Rock, Unity, and

18   Meta's Terms and Privacy Policies and understand what they are consenting to. Opp. at 11-12.

19   Plaintiff is wrong. The facts are established by judicial notice and the language of the policies

20   incorporated by reference, and there is no fact question that survives the pleadings. Plaintiff's

21   attempts to show purportedly "conflicting" provisions within the Hard Rock and Unity policies by

22   cherry-picking language favorable to her claim while ignoring these clear disclosures fare no

23   better here than they did in the FAC. Plaintiff ignores the direct (and assented-to) disclosure of

24   the now-challenged practice in both Hard Rock's and Facebook's disclosures. Plaintiff instead

25   merely repeats here (Opp. at 12) the misleading argument in the FAC that plucks a single

26   sentence that Hard Rock will not "share your Personal Information with [] third parties" out of its

27   expressly limited context. As explained *supra* Section II(A)(2), that language pertains only to

28   "automated devices and applications, such as Google Analytics," and has nothing to do with the

1  information sharing at issue here.  Mot. at 18.  Beyond these unfounded arguments, Plaintiff does

2  nothing to address her consent to Meta's Terms and Privacy Policies as a Facebook user.  Mot. at

3  20.

4  Still further, in her opposition—but nowhere in her SAC—Plaintiff incorrectly asserted

5  that the Meta pixel continues to collect information even after user selects "Reject All" on the

6  Cookie Banner.  Opp. at 2-3.  This assertion, and the exhibits purporting to support it, is a

7  sideshow that cannot stand because it is well established by courts within Ninth Circuit that

8  Plaintiff cannot introduce new facts in her opposition or attached exhibit.  *Brown v. Brennan*,

9  2017 WL 11713951, *1 n.2 (N.D. Cal. May 11, 2017) (declining to consider new facts offered in

10 opposition, accompanying declaration, or attached exhibit when considering a Rule 12(b)(6)

11 motion); *Payne v. Wasco State Prison*, 2015 WL 4493087, at *3 (E.D. Cal. July 23, 2015)

12 ("[N]ew allegations raised in the opposition are irrelevant for Rule 12(b)(6) purposes.").  The

13 purported evidence is also factually wrong and not relevant as it does not show anything about

14 Plaintiff's alleged interactions with the Hard Rock Website or that any information is transmitted

15 to Meta by Hard Rock.  In any case, the Court need not address this issue because Plaintiff's SAC

16 contains multiple legal pleading deficiencies that independently warrant its dismissal, and it

17 cannot be rescued by this false, irrelevant, and unsupported allegation.

18 In sum, the Opposition cannot save her CIPA claims for the reasons discussed above: the

19 claims are barred by Plaintiff's consent.

## **CONCLUSION**

For the reasons stated, Hard Rock respectfully requests that the Court grant their Motion to Dismiss Plaintiff's SAC entirely, without leave to amend.

Dated:  September 24, 2025

O'MELVENY & MYERS LLP
By:  */s/ Randall W. Edwards*
        Randall W. Edwards

*Attorney for Defendant Hard Rock Cafe International (USA), Inc.*